UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REBECCA BURRER,

    Plaintiff,

v.

THE BOEING COMPANY,

    Defendant.

NO. C14-1676RSL

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on "Defendant The Boeing Company's Motion for Summary Judgment on All Claims." Dkt. # 16. Having reviewed the materials submitted by the parties and having heard argument on April 22, 2016, the Court finds as follows.

## BACKGROUND

Plaintiff Rebecca Burrer filed suit against defendant The Boeing Company in King County Superior Court in September 2014, and Boeing removed the action to this Court. Dkt. # 1. Burrer asserted claims under the Family and Medical Leave Act of 1993 (FMLA) and for intentional and negligent infliction of emotional distress. Dkt. # 1-2 at 4-5. Boeing moved for summary judgment on all of plaintiff's claims. Dkt. # 16.

Burrer began working for Boeing in April 2007. In 2008, Burrer applied for and was granted intermittent FMLA leave for depression and leukemia surveillance, which allowed her to take between four and eight days of leave per month. Andrea Fox and other unidentified coworkers complained to Burrer that she was never at work and told her that she "should just

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 1

quit" since she "was never at work." Dkt. # 20 (Declaration of Rebecca Burrer) at 2. Although it is unclear when these comments began, they continued through August 2011. Id. Burrer reports that when she tried to complain to Ezra Embree, her temporary manager, about Fox's comments, he told her "that there was nothing he could do about it and that some people just don't like working with people like you who were not at work like they were." Id. at 2-4. During the week of August 8-12, 2011, Fox told Burrer that no one wanted to work with her, that no one liked her, and that everyone thought she was lazy. Id. at 3. Burrer reported the interaction to Buster Meston, who she identifies as her supervisor at the time, and Meston advised that Burrer speak with Human Resources. Id. Burrer informed Meston that she would give a statement to Human Resources after the crew meeting on Monday, August 15, 2011. Id.

On August 15, Burrer left the work area to meet with Human Resources. She attempted to text Meston, who had been her supervisor the Friday before, but entered the wrong area code. Id. at 4. Burrer did not notify her then-supervisor, Embree, that she was leaving to meet with Human Resources despite her understanding of Boeing's policy that she notify a manager before leaving the work area. Dkt. # 18 (Deposition of Rebecca Burrer) at 60-61. That evening, Embree met with Burrer and her union steward, John Lopez, and discussed the fact that Burrer had not informed Embree that she was leaving to go to Human Resources. Id. at 61-62. Embree warned that he was going to "write up" Burrer. Id. at 63.

On August 24, after Fox made additional comments, Burrer left the work area to go to Human Resources without informing Embree and was gone for approximately 30 minutes. Dkt. ## 18 at 64; 17 at 12 (email from Ezra Embree). Because Human Resources was busy when she first stopped by, Burrer returned during her lunch break and then spoke with Embree about taking a later lunch because she had been speaking to Human Resources. Dkt. # 18 at 65-66; Dkt. # 20 at 5. Andrew Cruikshank, a Human Resources Generalist at Boeing, investigated both instances of Burrer leaving the work area without notifying her manager and determined that a Corrective Action Memo (CAM) was warranted. Dkt. # 17 (Declaration of Andrew Cruikshank)

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 2

at 3. On August 30, Burrer was issued the CAM, which noted that it had been determined that on two occasions Burrer left the work area without notifying her manger. Id. at 3, 24 (8/30/11 CAM).

On May 16, 2012, Burrer returned late from a break with two others. Id. at 34 (email from Charles Smith). Her manager at the time, Charles Smith, observed Burrer avoid walking through the area where Smith was waiting. Id. Smith gave the other two employees verbal warnings and then told Burrer that she was observed returning late and it would be documented. Id. On May 25, Cruikshank met with Burrer regarding the May 16 tardiness, and Burrer refused to provide a statement. Id. at 4. Cruikshank decided that a CAM was an appropriate response to Burrer's May 16 lateness. Id. at 5. On May 30, Burrer was issued the CAM and given two days of time off without pay. Id. at 5, 38 (5/30/12 CAM).

On June 8, 2012, as a result of a phone call with her doctor, Burrer was late to a crew meeting. Dkt. ## 18 at 17-18, 77-8; 20 at 7. When Burrer joined the meeting, Smith and Burrer had an exchange. Smith stopped talking and glared at Burrer, and in response Burrer asked Smith what he was looking at. Dkt. ## 17 at 48 (HR Investigation Report); 18 at 78. Smith responded by saying something about Burrer being late. See Dkt. ## 18 at 78; 20 at 7. Burrer became upset and left. Dkt. ## 18 at 79; 20 at 7. She did not clock out or tell Smith where she was going or how long she would be gone. Dkt. # 18 at 79. Shortly after leaving, Burrer contacted Aetna and requested eight hours of FMLA leave. Dkt. # 18 at 79, 81. Burrer also attempted to contact Smith, but he did not answer his phone. Id. at 79; Dkt. # 20 at 7.

Following the June 8 incident, Smith requested that Boeing conduct an investigation of Burrer's conduct. Dkt. # 17 at 5. Human Resources Investigator Kelsie Sanchez Islas investigated the complaint and interviewed Smith, Burrer, and other potential witnesses. Dkt. # 17 at 5. In a report dated July 9, 2012, Sanchez Islas concluded that on June 8 Burrer left Boeing premises without notifying a manager. Dkt. # 17 at 45 (HR Investigation Report). On July 23, a representative from Boeing's Employee Corrective Action department drafted a

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 3

proposed CAM recommending that Burrer be terminated, which was provided to Cruikshank the same day. Dkt. # 17 at 5. Cruikshank, following the practice at the time, met with the HR Director, a member of the Employee Corrective Action management team, and a member of Employee Relations. Id. at 6. The group decided to terminate Burrer's employment because she had received multiple CAMs and repeatedly flaunted workplace rules. Id. Before Cruikshank could meet with Burrer's manager to discuss the CAM with him, Burrer took an extended FMLA leave. Id. When Burrer returned from leave on October 11, 2012, manager Douglas Kramer issued the CAM to her, terminating her employment effective that day. Id. at 17, 51 (10/11/12 CAM).

## DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It need not "produce evidence showing the absence of a genuine issue of material fact" but instead may discharge its burden under Rule 56 by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Id. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient"; the opposing party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 4

find for the nonmoving party." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (internal citations omitted).

**B. FMLA**

Under 29 U.S.C. § 2615(a)(1), employees are protected from unlawful actions by their employer as a result of taking FMLA leave. Claims under (a)(1) are known as interference claims. Under 29 U.S.C. § 2615(a)(2), employees who oppose employer practices made unlawful by the FMLA are protected. Claims under (a)(2) are known as retaliation claims. Plaintiff has not clarified the basis for her FMLA claim. See Dkt. # 1 (Complaint) at 4-5; Dkt. # 29 (Opposition to Motion for Summary Judgment) at 6-11. Therefore, the Court will determine whether plaintiff's FMLA claim can survive summary judgment under either analysis.

**1. FMLA Interference**

Section 2615(a)(1) states that it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). To succeed on an FMLA interference claim, Burrer must prove that she took "FMLA-protected leave" and that doing so "constituted a negative factor" in an adverse employment decision. Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1125 (9th Cir. 2001). Boeing does not dispute that Burrer was entitled to FMLA leave or that she was subject to an adverse employment action. Therefore, Burrer must present some evidence – either direct or circumstantial – that her use of FMLA-protected leave was a negative factor Boeing considered in its decision to terminate her employment. Id.

Boeing presented evidence that over several years, Boeing granted all of Burrer's requests for both intermittent and continuous FMLA leaves. Dkt. # 18 at 27-31. Boeing also presented evidence that Burrer's employment was terminated after she repeatedly failed to follow Boeing's generally applicable policy that she inform her supervisor before leaving the work area. See Dkt. # 17 at 51 (10/11/12 CAM). Burrer understood this policy and violated it on multiple occasions. Dkt. # 18 at 35-36, 60-61, 63-64, 79.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 5

In response to Boeing's motion, Burrer offers the following: 1) her belief that Boeing's claims are a "pretext for unlawful retaliation for taking her leave"; 2) that the times she left the work area without notice were to complain about employees commenting on her attendance or to take FMLA leave; 3) the temporal proximity between her FMLA leave and her termination; and 4) her perception of other employees' actions violating Boeing's rules; 5) comments by coworkers and supervisors regarding her attendance. Dkt. # 19 at 8-9. Because it is not clear whether Burrer intended to present these arguments in support of her FMLA interference or retaliation claim, the Court will consider whether any of these arguments create an issue of material fact regarding whether Burrer's FMLA-protected leave was a negative factor in her termination. The Court concludes that Burrer has not presented probative evidence that presents a genuine issue of material fact regarding her FMLA interference claim for the reasons set forth below.

First, Burrer's feelings and speculation regarding the reason for her termination are insufficient for her claim to survive summary judgment. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1081-82 (9th Cir. 1996). Moreover, the evidence presented supports the conclusion that Burrer's termination was unrelated to her FMLA use. Burrer agreed that Charles Smith, the supervisor who reported the policy violation that led to Burrer's termination, never said or did anything to discourage her from taking her FMLA leave or retaliate against her for taking leave. Dkt. # 18 at 84-85. Likewise, Burrer agreed that no member of Human Resources did anything to discourage her or retaliate against her for taking FMLA leave. Id. at 95-96.

Second, no matter the reason for Burrer to have left the work area without notifying her supervisors, it is not a violation of the FMLA for an employer to discipline an employee for failing to comply with a generally applicable policy. See Buckman v. MCI World Com Inc., 374 Fed App'x 719, 720 (9th Cir. 2010). Boeing has presented evidence that it is Boeing policy that all employees on their factory floor must notify a manager or supervisor before leaving the work

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 6

area, a policy of which Burrer was aware. Dkt. ## 17 at 24; 18 at 34-37. Burrer has not presented any evidence suggesting that the fact that she took FMLA leave relieved her of the obligation to comply with this policy.

As to Burrer's third basis for avoiding summary judgment, she has not demonstrated a sufficiently close temporal connection between her termination and taking FMLA leave or complaining about her coworkers' comments. Burrer was terminated in 2012, which was four years after she began taking intermittent FMLA leave and more than a year after reporting her coworkers' comments to HR. See Swan v. Bank of Am., 360 F. App'x 903, 906 (9th Cir. 2009) (four months was "too remote in time to support a finding of causation premised solely on temporal proximity"). Moreover, the fact that Boeing terminated Burrer's employment upon her return from continuous FMLA leave does not demonstrate that the FMLA leave was the reason for Burrer's termination. Burrer does not dispute that the decision to terminate her employment was made before she took her second continuous FMLA leave. See id. ("[A]n employer is not required to cease pursuing a disciplinary course of action against an employee that began before that employee took FMLA-related leave, simply because that employee took leave.").

The evidence that Burrer offers in support of her fourth reason for denying summary judgment – her list of other employees' perceived violations of Boeing policy (Dkt. # 20 at 14-15) – is insufficient. Burrer's perception that these employees violated Boeing policy and were not punished is based upon speculation. Burrer has not presented evidence these employees did not get approval from their managers regarding their plans to be away from the work area and the length of time they were allowed to be away. Nor is there any evidence that the employees were not subject to discipline when they failed to comply with Boeing policies. Burrer's speculation regarding her former coworkers' work practices and discipline is insufficient to avoid summary judgment.

Finally, Burrer argues that comments by her coworkers and supervisors provides support for her claim. The comments regarding her attendance that Burrer appears to rely upon were

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 7

made through August 2011.  Dkt. # 20 at 2.  On August 30, 2011, Burrer received a CAM for leaving the work area twice without permission.  Dkt. # 17 at 3, 24.  All elements of Burrer's FMLA interference claim were present at that time, but Burrer did not file suit until September 26, 2014, more than three years later.  Any claims based upon comments and discipline in August 2011 are therefore time-barred.  See 29 U.S.C. § 2617(c); Charnley v. Boeing Co., 2009 WL 279030, at *2 (W.D. Wash. Feb. 5, 2009).

For the reasons discussed above, Burrer has not presented evidence that creates a genuine issue of material fact with respect to an FMLA interference claim.

**2. FMLA Retaliation**

Under 2615(a)(2), it "shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA.  This provision applies only to an employer's discriminatory action taken in response to an employee who opposes a practice made unlawful by the FMLA; it does "not cover visiting negative consequences on an employee simply because he has used FMLA leave."  Bachelder, 259 F.3d at 1124.  The only facts Burrer has set forth that could possibly support a claim that she opposed practices made unlawful by the FMLA are the two instances of reporting her coworkers' and supervisor's comments to Human Resources in August 2011.  As discussed above, these claims are time-barred.  Charnley, 2009 WL 279030, at *2.  Burrer therefore has failed to present evidence that creates a genuine dispute regarding an FMLA retaliation claim.

**C. Emotional Distress**

Burrer's complaint includes claims for both intentional and negligent infliction of emotional distress.  Dkt. # 1-2 at 5.  These claims require Burrer to show, among other things, severe emotional distress or emotional distress manifested by objective symptoms.  Washington v. Boeing Co., 105 Wn. App. 1, 17 (2000).  In its motion for summary judgment, Boeing argued that these claims must be dismissed because they are derivative of Burrer's unsuccessful FMLA claim.  Dkt. # 16 at 21.  Boeing also offered evidence that Burrer testified that she did not meet

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 8

the standard for severe emotional distress and that Burrer offered no evidence that Boeing caused any of her emotional distress. Id. at 21-22. Burrer did not respond to Boeing's evidence or arguments. See Dkt. # 19. The Court therefore finds that Burrer has conceded that her claims for intentional or negligent infliction of emotional distress are without merit. See Silva v. U.S. Bancorp, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011). Accordingly, Burrer's emotional distress claims will be dismissed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment (Dkt. # 16). All plaintiff's claims are dismissed with prejudice. The Clerk of Court is directed to enter judgment for defendant.

DATED this 22nd day of April, 2016.

*[signature]*

Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 9